**CONTICARRIERS & TERMINALS, INC. and Riverway Company**

v.

**DELTA BULK TERMINAL, a Division of Ryan–Walsh, Inc.**

**Civ. A. No. 91–304–B.**

United States District Court, M.D. Louisiana.

Sept. 24, 1992.

Chris Reeder and Machale A. Miller, New Orleans, LA, for Conticarriers & Terminals, Inc. and Riverway Co.

Allen F. Campbell, New Orleans, LA, for Delta Bulk Terminal.

Scott S. Partridge and Patrick J. McShane, Lemle & Kelleher, New Orleans, LA, for Peavey Barge Lines.

## RULING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

POLOZOLA, District Judge.

This motion requires the Court to consider the following issues: (1) when two debtors are found by a state court to be jointly and severally liable to a creditor based on an implied contract between the debtors and the creditor, does maritime law provide a right of contribution to a debtor who satisfies the entire debt; and, (2) if so, what are the respective portions of the debt between the two debtors when there is no agreement between them?

A Louisiana state court[1] found Conticarriers & Terminals, Inc. and Riverway Company ("the Barge Lines") to be jointly and severally liable with Delta Bulk Terminal ("Delta Bulk"), the defendant in this action, under general maritime law for past unpaid fleeting and shifting[2] charges owed to Convent Marine Companies, Inc. ("Convent Marine"). The state court further held that the same parties were jointly and severally liable[3] to Convent Marine for all future fleeting and shifting charges. Under the state court judgment Conticarriers and Delta Bulk were held jointly and severally liable to Convent Marine for past unpaid services totalling $53,132.38 and Riverway and Delta Bulk were jointly and severally liable to Convent Marine for past unpaid services totalling $70,014.92.[4] The state court made no determination as to the respective portions of the debt between Delta Bulk and the Barge Lines.[5] The Louisiana Fifth Circuit Court of Appeal affirmed the decision of the lower court.[6]

Convent Marine threatened to execute the state court judgment on past charges against the Barge Lines. The Barge Lines paid the entire debt. In accordance with the state court's judgment that the Barge Lines and Delta Bulk were jointly and severally liable for future fleeting and shifting charges, the Barge Lines paid all of the invoices that Convent Marine presented to it after the state court judgment. The Barge Lines now seek contribution from Delta Bulk for half of these payments made. Additionally, the Barge Lines seek a declaratory judgment from this court which would declare that Delta Bulk is liable for half of all future fleeting and shifting charges that Convent Marine may assess against the parties.

A judgment rendered by a state court of competent jurisdiction is entitled to full faith and credit in federal court.[7] The Louisiana state court has already ruled that each of the Barge Lines is jointly and severally liable with Delta Bulk for past and future fleeting and shifting charges owed,

1. The facts of this case are set forth in the state appellate court's opinion. *Convent Marine Companies, Inc. v. Delta Bulk Terminal, Inc.,* 556 So.2d 610 (La.App. 5th Cir.), writ denied, 559 So.2d 1365 (1990).

2. "Fleeting" refers to the mooring of barges in a designated location for a temporary period of time. A fleeting area serves basically the same purpose for barges as a parking lot serves for cars. "Shifting" refers to the movement of barges to and from the fleeting area. *Id.* at 611.

3. The state district court found that because Delta Bulk and the Barge Lines had benefitted from Convent Marine's services, an implied contract existed between Convent Marine, Delta Bulk and the Barge Lines.

4. For convenience only, the Court will refer to "the Barge Lines" collectively since each of them stands in the same position with respect to Delta Bulk.

5. Ironically, Delta Bulk sought the same type of relief from the state court judge that plaintiffs now seek from this court. After the state court judge found Delta Bulk and the Barge Lines to be jointly and severally liable, Delta Bulk brought a petition requesting Supplemental Relief from the court in the form of "contribution or indemnity from the Barge Line Defendants for one-half the amount of the shifting charges previously paid by Delta Bulk...." The court denied the relief but made it clear in a supplemental order that it was not ruling on the merits of any claims between Delta Bulk and the Barge Lines because no cross-claims or incidental demands had been made in the pleadings as of trial. The state court stated further that no dispositive *res judicata* effect was intended by the denial. The court stated that such claims were simply not before it and, therefore, would have to be brought in a separate action.

6. *Convent Marine Companies, Inc. v. Delta Bulk Terminal, Inc.,* 556 So.2d 610 (La.App. 5th Cir.), writ denied, 559 So.2d 1365 (1990).

7. 28 U.S.C. § 1738 (1976).

or to be owed, to Convent Marine. Thus, the only issues left for this court to decide are: (1) when two debtors are found to be jointly and severally liable to a creditor based on an implied contract between the two debtors and the creditor, does maritime law provide a right of contribution to a debtor which satisfies the entire debt; and (2) if so, what are the respective portions of the contribution between the two debtors when there exists no agreement between them.

Because the state court found Delta Bulk and the Barge Lines to be jointly and severally liable to Convent Marine under maritime law, this court must also look to maritime law to determine what right, if any, to contribution the Barge Lines may have under the facts of this case. Unfortunately, maritime law offers little guidance where contribution is sought by parties who were held liable under an implied contract theory.[8] Apparently, there is neither an established maritime rule nor a federal statute to apply in this case. Therefore, it is necessary for this court to either "borrow" state law or fashion a new maritime rule.

▮ Louisiana Civil Code article 1804 provides in the relevant part:

> Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary....
>
> A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each....[9]

Thus, a solidary obligor who extinguishes the debt is generally entitled to a right of contribution against his co-debtor in the amount of the co-debtor's virile portion.[10] When the obligation arises from a quasi-contract, virile portions are presumed to be equal in the absence of an obligor's agreement or any express judicial declaration to the contrary.[11] The Court may consider the circumstances of the case to determine whether liability should be apportioned in a different manner.[12]

▮ It is clear under the facts of this case that there was no agreement between Delta Bulk and the Barge Lines as to apportionment of the Convent Marine charges. Moreover, there is no judgment which provides that the relative liability of each party should be anything other than equal. The state court judgment in this case only provided that both Delta Bulk and the Barge Lines had benefitted from the services provided by Convent Marine and both should be jointly and severally liable for that reason. The state court did not purport to decide the virile portions of the co-debtors. A review of all the facts and circumstances of this case provide no reason for holding that the apportionment of liability should be anything but equal. The state court specifically held that *both* parties benefitted from Convent Marine's services.[13] Under Louisiana law, the re-

---

**8.** Delta Bulk cites the case of *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293 (2nd Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988). The *Ingersoll* court said that there can be no indemnity between parties where each bear primary responsibility "regardless of their related degrees of fault." However, *Ingersoll* involved joint and several liability based on each of the defendants breaching its separate contract with the plaintiff. Furthermore, *Ingersoll* involved a claim by one of the defendants against the other for complete indemnity, not contribution.

**9.** La.Civ.Code art. 1804.

**10.** *Great Southwest Fire Ins. Co. v. CNA Ins. Co.*, 557 So.2d 966, 969 (La.1990). It should be noted that Louisiana Civil Code article 1805 permits assertion of the right to contribution by filing a third-party demand in the suit in which the primary liability to the creditor is litigated. However, Article 1805 is permissive only and does not require the enforcement of contribution. A subsequent action seeking contribution may be brought. *Thomas v. W & W Clarklift*, 375 So.2d 375 (La.1979).

**11.** La.Civ. art. 1804, comment (b).

**12.** *Great Southwest Fire Ins. Co.*, 557 So.2d at 969.

**13.** This is not a case where one party merely acted as a surety for the other or where one party was the sole, or even primary, beneficiary of the implied contract.

spective virile portions of the Barge Lines and Delta Bulk for the joint and several debt, both past and future, is one-half each. Furthermore, each of the co-obligors has a right of contribution against the other for any amount it pays over its virile portion.

■ In fashioning an appropriate maritime rule where none exists, federal courts also look to the Restatement of the Law. Section 81 of the Restatement of Restitution provides:

> Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another as to which, between the two, neither had a prior duty of performance, is entitled to contribution from the other, except where the payor is barred by the wrongful nature of his conduct.[14]

Comment (b) to this section provides that it applies: (1) where two or more persons whether primary or secondary obligors are interested in an enterprise out of which an obligation arises; and, (2) where neither of them with respect to the other has a prior duty of performance even though one of them appears to be primarily responsible to the creditor.

■ Section 82 of the Restatement of Restitution provides that an obligor is entitled to contribution from his co-obligor only when it has discharged more than its proportionate share, if the time for performance is due. However, if an obligor pays more than its proportionate share before the time for performance is due, its right to contribution arises at the time performance is required.

■ The Restatement of Restitution also provides guidance on the amount of contribution to which an obligor who discharges a debt may be entitled to recover. Section 85 provides:

> A person who has discharged more than his proportionate share of a duty owed by himself and another ... and who is entitled to contribution from the other under the rules stated ... is entitled to reimbursement, limited

> (a) to the proportionate amount of his net outlay properly expended and

> (b) if the payor became a party to the transaction without the consent of the other, to the proportionate amount by which the other has thereby benefitted.[15]

Comment "a" to this section explains that a co-obligor which becomes an obligor without the fault of a co-obligor is entitled to contribution in an amount that will put it on an equality of loss with others if its share of the obligation is undertaken. Finally, Comment "e" to the same section provides:

> Two or more persons engaging in a common enterprise ... share the duty of performance equally, in the absence an agreement between them providing for different shares.... As long as all remain solvent, available, and liable to contribution, one who pays the entire amount is entitled to recover from each of the others a sum equal to such amount divided by the number of persons participating. Thus if there are three co-debtors and one pays the entire debt, he is entitled to restitution of one-third of the amount from each of the others.[16]

■ Thus, whether the Court applies the Restatement of Restitution or Louisiana law to the facts of this case, the result is the same. There is no agreement between the parties which provided for apportionment for of liability between them. Thus, their respective virile portions of the joint and several obligation, both past and future, are one-half each. It follows that each co-obligor is entitled to contribution from the other for any amount it pays over its virile portion.

It is important to note that the right to contribution, under both Louisiana law and the Restatement of Restitution, does not arise until after a co-obligor has discharged more than its proportionate share of a debt. Consequently, neither the plaintiffs nor the defendant in this case have a right to con-

**14.** Restatement (First) of Restitution § 81 (1937).

**15.** *Id.* at § 85.

**16.** *Id.* at § 85 comment e.

tribution as to a particular charge until after that party has paid more than half of the debt.

Therefore:

IT IS ORDERED that the plaintiffs' motion for partial summary is GRANTED.

IT IS FURTHER ORDERED that the parties shall advise the Court within 20 days the remaining issues involved in this case and the discovery, if any, required on these issues.